Argued February 2; affirmed February 21, 1939

## BUNNELL *v.* PARELIUS ET AL.

(87 P. (2d) 230)

674

*Leroy Lomax* and *Nicholas Jaureguy,* both of Portland, for appellant.

*Don K. Grant* and *W. H. Morrison,* both of Portland (Maguire, Shields & Morrison, of Portland, and Butler & Jack, of Oregon City, on the brief), for respondent.

BELT, J.   This is an action to recover damages for personal injuries sustained by a pedestrian who was struck by an automobile driven by Kenneth Brown, an employee of the defendant.   The automobile, owned by the Ladd Estate Company, was taken by one of its representatives to the garage of the defendant to have some minor repairs made and for the purpose of sale. Under the stipulated facts it is admitted that the negligence of the employee of the defendant was the proximate cause of the plaintiff's injuries.   It is the contention of the defendant, however, that, at the time of the accident, the employee was not acting within the scope of his employment, but was engaged upon a mission of his own.   Brown was made a party defendant but made no appearance and did not testify as a witness.

At the conclusion of the plaintiff's case in chief, the court allowed the motion of the defendant for a judgment of involuntary nonsuit.   Plaintiff appeals.

██ In view of the vital issue of agency presented on appeal, the statement of facts must be made in the light most favorable to the plaintiff.   Since the motion for a nonsuit is in the nature of a demurrer to the evidence, it remains to be determined whether a reasonable inference can be drawn from the evidence that, at the time of the accident, the employee of the defendant was acting in furtherance of his master's business.

The defendant Parelius, under the assumed name of Parelius Motor Co., was engaged in the business of operating an automobile service station and garage at Oswego, Oregon. In connection with such business, the defendant also sold used automobiles. Prior to the 7th of March, 1937—the date of the accident—a Lincoln Zephyr was brought to the garage of the defendant for the purposes stated. Kenneth Brown was employed by the defendant to grease cars and to sell gasoline. On various occasions, however, Brown endeavored to sell second-hand cars owned by the defendant and demonstrated the same to prospective purchasers. Brown had access to the keys of all the cars. He put the cars in the garage at night, locked them up, and took them out mornings to put on display on an adjoining lot. The defendant was about his place of business the greater part of the time and we think a fair inference may be drawn that he knew of the activities of Brown in reference to his various demonstrations of the cars for sale, although no sale was ever made by him.

On the night of March 6th, Brown closed the station and went to a restaurant for his dinner. While there he said "he was going to Portland" and asked several young men of his acquaintance to go with him. All refused the invitation excepting a young man named Claude Rush. After having a "couple of beers before they left", they drove the Lincoln Zephyr south to Oregon City and then proceeded over the super-highway to Portland arriving there about ten o'clock in the evening. While en route to Portland the boys had some beer. After reaching Portland, Brown and Rush went to the Rathskeller, a restaurant and "beer parlor", where some more beer was consumed. Rush knew the "master of ceremonies" of the restaurant and

succeeded in getting an invitation from him to sing. Rush said that, after singing, he returned to a table where Brown was engaged in a conversation with a man and his wife "discussing the merits and so forth of this Lincoln Zephyr." According to Rush, Brown said that "he was going to take these people for a ride." He states that he saw Brown and these people—whose names are not disclosed by the record—get up from the table, go out, get into the car and drive away. Rush did not return with Brown to Oswego but remained in Portland that night.

Harry E. Bowes, a printer employed by the Oregonian Publishing Company, accompanied by four of his friends, was driving an automobile south on Fourth street in the city of Portland about one-half hour after midnight of the day in question. He testified that he saw Brown hit plaintiff at the intersection of Southwest Hall street and Southwest Fourth avenue and that, after he did so, Brown did not stop but speeded on into the night. Bowes followed Brown in hot pursuit and succeeded in obtaining the license number of the car. Bowes said that, at the time of the accident, there were "at least two people in the car" which struck the plaintiff but that he was unable to identify them.

On the following Monday, Brown was arrested, pleaded guilty, and commenced serving a term in jail.

■ In the light of the above evidence, can it be said that a reasonable inference can be drawn that Brown was acting in furtherance of his master's business? We think not. As we view the record, the only reasonable deduction that can be made is that Brown was on a joy ride of his own. It affirmatively appears from plaintiff's case in chief that the purpose of the trip

from Oswego to Portland was not to further the interests of the defendant but to enjoy the night club life and the bright lights of the city of Portland. It is purely a matter of speculation as to whether the "man and his wife" seen talking to Brown in the Rathskeller were occupants of the car at the time of the accident. A jury must have something more than "food for speculation."

■ We are not unmindful that the relationship of bailor and bailee existed between the Ladd Estate Company and the defendant and, under the terms of the bailment, the defendant had control and custody of the car. When this car was found in possession of an employee of the defendant it might well be argued that, by reason of such status alone, a reasonable inference could be drawn that the employee was using the car in furtherance of his master's business. We are inclined to agree with the appellant that the same inference of agency may be drawn from proof of bailment as upon proof of ownership. It is the control and custody of the car rather than the title that is material: *Foundation Co. v. Henderson,* 264 Fed. 483. However, the inference or presumption arising merely by reason of the status and relationship of the parties is overcome and disappears in the light of the affirmative showing that the car was not used in furtherance of the master's business. Brown was looking for beer, not customers, when he drove to Portland. Defendant was not called upon to refute any idea of agency, as the evidence offered on behalf of the plaintiff relieved him of that burden. In other words, a prima facie case of agency— at least invulnerable to motion for nonsuit—would have been established had the plaintiff been content merely to show that the defendant had control and custody of

the car as bailee and that Brown was his employee and in possession of the car at the time of the accident.

This was a most unfortunate accident for the plaintiff, but we see no reasonable ground upon which the jury could hold the defendant liable in damages for the injuries sustained.

It follows that the judgment of the lower court is affirmed.

RAND, C. J., and BAILEY and LUSK, JJ., concur.