Argued February 13; reversed March 11, 1941

# BUNNELL *v.* PARELIUS ET AL.

(111 P. (2d) 88)

Before KELLY, Chief Justice, and RAND, ROSSMAN, BELT, BAILEY and LUSK, Associate Justices.

*Donald K. Grant* and *W. H. Morrison,* both of Portland (Maguire, Shields & Morrision, of Portland, on the brief), for appellant.

*Leroy Lomax,* of Portland (Nicholas Jaureguy, of Portland, on the brief), for respondent.

KELLY, C. J. The automobile involved herein was owned by the Ladd Estate Company. Defendant, Parelius, was operating a garage and service

station at Oswego, Oregon. Defendant Brown was employed by Parelius to operate the gasoline pump and sell gasoline and oil. The automobile, a Lincoln Zephyr, had been jammed by another car and the rear of the body smashed in. The testimony is that "there was quite a dent in it."

An employee of the Ladd Estate Company had delivered the Lincoln Zephyr to defendant, Parelius, to be repaired with the further instruction that, after it had been repaired, it could be displayed to prospective purchasers and if they, or any of them, became interested in a possible purchase, defendant Parelius should communicate with the manager of said Ladd Estate Company, who was in California, as to price and terms.

On March 6, 1937, before the car had been repaired, defendant Brown took the car and leaving Oswego sometime after 9 p. m. retained possession thereof during the remainder of that night. At about 12:15 a. m. of March 7, 1937, in crossing the intersection of Southwest 4th Avenue and Southwest Hall street, in Portland, the car driven by defendant Brown ran into and upon plaintiff while plaintiff as a pedestrian was crossing said intersection. This collision resulted in serious injury to plaintiff.

The only direct testimony on the subject is to the effect that defendant Parelius had expressly forbidden defendant Brown the use of the cars in the garage.

Defendant Brown was not served with summons, made no appearance, and did not testify herein.

■ Plaintiff seeks to invoke the inference that a person driving an automobile owned by another is the

agent of the owner and is acting within the scope of such agency.

In February, 1939, this case was before this court upon an appeal by plaintiff from an order of involuntary nonsuit. In an opinion then written by Mr. Justice BELT this court held that—

"The inference or presumption arising merely by reason of the status and relationship of the parties is overcome and disappears in the light of the affirmative showing that the car was not used in furtherance of the master's business." *Bunnell v. Parelius,* 160 Or. 673, 87 P. (2d) 230.

It is true that when that opinion was written, facts were before this court which are not in the record now before us; and we are not now giving any consideration to those facts; but the principle of law announced is sound and logical.

■ Doubtless, in many cases of bailment, the inference above mentioned might be applied in such a way as to render a bailee liable for the negligence of another in operating the automobile which was the subject of such bailment. "It is the control and custody of the car rather than the title that is material." *Bunnell v. Parelius,* supra.

■ In the case at bar, however, the terms of the bailment were such that, at the time Brown was operating the car, Parelius had no other right or duty with respect to it than merely to repair it. It cannot be claimed that operating a car at midnight by an employee, whose duty was in nowise connected with making repairs, was in furtherance of his master's business, that business being merely to repair the car in question.

■ The issues presented here have been the subject of three prior trials. If the terms of the bailment of the car in suit were not as claimed by defendant, on the fourth trial plaintiff had had ample time to secure the testimony of the bailor in refutation thereof. If the condition of the car was not as defendant claims, with reference to whether it had been repaired by defendant when plaintiff was injured, ample opportunity had been afforded plaintiff to controvert defendant's testimony in that regard. The record is barren of refutation or denial of defendant's statement with respect to either the terms of the bailment or the fact that the car had not yet been repaired in accordance with those terms when plaintiff was injured.

We think, therefore, that the inference of agency arising from ownership is not applicable to the relationship of the parties defendant to each other and to the car in suit as disclosed by the undisputed testimony herein. The time had not arrived when, under the terms of the bailment, any demonstration or attempt to display or sell the automobile could be made.

■ The statute of this state defines an inference thus:

"An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect." Sec. 2-402 O. C. L. A.

That the conclusion, to the effect that the operator of an automobile owned by another is the agent of the owner and acting within the scope of such agency is a deduction from the facts proved, cannot be questioned. That it is made by the reason of the jury

and that there is no law expressly directing such deduction to be made is equally apparent.

Under the statutory definition of presumption, the deduction just mentioned is merely an inference and is not a presumption.

The statute defines a presumption thus:

"A presumption is a deduction which the law expressly directs to be made from particular facts." Sec. 2-403 O. C. L. A.

A little over a quarter of a century ago, this court, speaking through the late Mr. Justice McBride, said:

"It has been frequently held by the courts that where an automobile is operated by a person employed for that purpose, it will be presumed that he is acting within the scope of his authority and about his employer's business. If he is not so operating it, this is a fact peculiarly within the knowledge of the employer, and the burden is upon him to overthrow this presumption by evidence of which the law presumes he is in possession:" [citing authorities] "By the terms, 'raises a presumption,' 'will be presumed.' and other similar language used in the decisions above cited, it is evident it is not meant that the circumstances of the use or possession of an automobile by an employee of the owner raises any presumption of law that the person in charge of it is using it upon the business of the master, but rather that such facts are sufficient to justify a jury in inferring that such is the case." *Kahn v. Home Telephone & Telegraph Co.*, 78 Or. 308, 152 P. 240; *West v. Kern*, 88 Or. 247, 171 P. 413, 1050, L. R. A. 1918D, 920.

■ Bearing in mind that, by the terms of the statutory definition of an inference, it is the result of reason, that is, the reason of the jury, a result which is unreasonable therefore cannot be transformed into an inference such as our statute defines.

■ The writer is not unaware that many times the terms, "inference" and "presumption", are used interchangeably and as synonyms. Moreover, the distinction made by the Oregon statutes, above quoted, is not that of many eminent legal authorities; but, certainly, this court is bound by duly enacted statutory definitions, unless the same are obviously absurd.

■ In considering the principle that proof of ownership of an automobile operated by a third party creates an inference that in such operation the third party is acting as the agent of the owner within the scope of such agency, if we treat it as merely an inference such as our statute defines, it logically follows that if the reasonableness of such purported inference is absent, the inference itself is nonexistent.

This conclusion was announced in the case of *Judson v. Bee Hive Auto Service Company*. There, the court, speaking through Mr. Justice BELT, said:

"Ordinarily, whether an inference or presumption has been overcome is a question for the jury, but if the evidence is of such a character that but one reasonable deduction can be made therefrom the court may so declare as a matter of law." *Judson v. Bee-Hive Auto Service Co.*, 136 Or. 1, 14, 294 P. 588, 297 P. 1050, 74 A. L. R. 944.

■ There is testimony that defendant, Brown, while employed by Parelius, came in an automobile and secured a load of sawdust from a mill some distance from the Parelius garage.

There is testimony that when advised of the accident in suit, Parelius remarked, "I don't believe that I will let my employees drive my cars any more."

Use by defendant, Brown, of cars in close proximity to the garage of defendant, Parelius, is shown;

and testimony that Brown had no car of his own and that, for a time, he drove in an automobile to and from his place of lodging, a distance of about a mile from the garage, is in the record.

This testimony at best could support no stronger claim against Parelius than that, as to the operation of the cars so involved, Brown was acting in furtherance of the business of Parelius; but as to the Lincoln Zephyr, in suit, for the reasons stated no such claim can be made.

Seasonably, a motion was made by appearing defendant for a directed verdict in favor of such defendant. This motion was overruled. In considering such a motion the court gives to the plaintiff not only the benefit of his own evidence; but also the benefit of any evidence favorable to him though introduced by the defendant. So treating defendant's motion, we think that error was committed in overruling it.

*Millar v. Semler,* 137 Or. 610, 2 P. (2d) 233, 3 P. (2d) 987, cited by plaintiff, is a case where defendant, upon it being shown that he was the owner of the automobile and that it was driven by his son, did not go forward with his own testimony and show that the driver was not acting for him or under his authority.

In *Davis v. Underdahl,* 140 Or. 242, 13 P. (2d) 362, the record discloses testimony to the effect that the owner of the car stated in a conversation with one Haglund, a witness, that the driver of the car at the time of the accident was working part time for defendant, and was going to school part of the time and that said driver drove the car off and on for him. As to the car involved in the instant case, there is no such admission in the record by appearing and appealing defendant.

In *Miller v. Service and Sales, Inc.*, 149 Or. 11, 38 P. (2d) 995, 96 A. L. R. 628, also cited by plaintiff, the defendant claimed that the driver of the car had borrowed it to take his family to the coast. The car was a new seven-passenger twelve-cylinder Packard, and this court held that a reasonably minded person might consider it improbable that the sales company, which the testimony showed the defendant to be, would take such a car off of its sales-room floor and lend it to the driver for the purpose mentioned.

No reasonably minded person would think that before the ordered repair of the car in suit here had been made, the repair-man would permit Brown to drive the car from 9 p. m. of one day until 12:15 a. m. of the next day, or that in doing so Brown was acting in furtherance of the repair-man's business.

In *Steele v. Hemmers*, 149 Or. 381, 40 P. (2d) 1022, it was shown that the 26-year-old son of the owner of the car was driving at the time of the accident; that the car was customarily driven by one or the other of the boys when taking the smaller Hemmers' children to school at Gresham; and about three hours after the accident the deputy sheriff had a conversation with defendant at the scene of the accident wherein the father said: "He always talked to his boys and asked them to drive carefully and try to keep out of accidents." No reference was then made to any instructions not to take the car out on such occasions.

The judgment of the circuit court is reversed and the cause dismissed.

LUSK, J. (concurring). Before *Judson v. Bee Hive Auto Service Co.*, 136 Or. 1, 294 P. 588, 297 P. 1050, 74 A. L. R. 944, this court, in a number of cases, had con-

sidered the effect to be given to evidence that the defendant was the owner of an automobile driven by another, whose negligent driving caused injury to the plaintiff. Uniformly, it was held that such evidence sufficed to make a *prima facie* case of responsibility of the owner of the vehicle for the acts of the driver. Sometimes the court arrived at this result by saying that the fact of ownership creates a presumption of law that the driver was the agent of the owner and acting within the scope of his agency at the time of the accident; sometimes, that the jury might so infer; at other times, both.

In the Judson case, which was twice argued upon elaborate briefs, the court, sitting in banc, held unanimously, and, as I think, by way of putting at rest a vexatious question, that in this state the fact of agency in such circumstances was one that the jury might reasonably deduce from the fact of ownership; and that it was not a conclusion made imperative by the law. In other words, the court decided, as definitely as anything could be decided, that it was dealing, not with a presumption of law but with an inference of fact.

Were the question still an open one, as I think it is not, the analysis in the able, specially concurring opinion of Mr. Justice ROSSMAN might be persuasive. Certainly, there is much authority for his position. But there is likewise much authority for the position of this court. To go no further, among the numerous decisions cited by Wigmore in his discussion of the subject, are decisions espousing the inference theory, including, indeed, the Judson case itself: IX Wigmore on Evidence (3d Ed.), § 2510a, Note 2, pp. 400 *et seq.* Again, this court held in the Judson case that in this state the only presumptions are those enumerated in

the statute. This is disputed in the specially concurring opinion and Wigmore's construction of the California statute is cited as authority. But the California supreme court holds that there are no presumptions of law except those "declared by our code or statutes", and that for the court to determine otherwise would be "to usurp the legislative function". *Davis v. Hearst,* 160 Cal. 143, 116 P. 530. Surely, high as is the authority of Professor Wigmore, it is not to be preferred to that of the highest court of a state in construing its own statute.

As I understand the argument now advanced, it is thought that the court should abandon the rule of the Judson case because a presumption is a mere device or expedient founded in convenience or necessity, to enable the plaintiff to get past a nonsuit, and which vanishes when the facts are shown; while, an inference being a species of evidence, it is necessary, in order to reach the result here announced, to weigh the evidence on one side against that on the other, and thereby to violate the fundamental law. I have put the argument somewhat more bluntly than does Mr. Justice ROSSMAN, but, I think, with substantial accuracy.

The difficulty I find with that position is the premise, not stated though assumed, that a presumption is not evidence. Whatever may be the law in other jurisdictions, a presumption in this state is evidence, so declared by statute and in at least four decisions of this court: §§ 2-401, 2-405, 2-1001, subd. 2, O. C. L. A.; *Clark v. Shea,* 130 Or. 195, 205, 279 P. 539; *City M. T. Co. v. Franklin Fire Ins. Co.,* 116 Or. 102, 107, 239 P. 812; *Sather v. Giaconi,* 110 Or. 433, 440, 220 P. 740; *Doherty v. Hazelwood Co.,* 90 Or. 475; 484, 175 P. 849, 177 P. 432. There is a dictum in *Johnson v. Hoffman,*

132 Or. 46, 58, 284 P. 567, which points the other way, but the court found it unnecessary to rule on the question; and, so far as I am able to ascertain, there is no decision of this court contrary to the four cited, and, in the face of the plain language of the statute, I am unable to see how there could be. Of course, there are certain so-called presumptions which must be excepted from this view. Thus, it is said that the defendant in a negligence action is presumed to have exercised due care, but that is only another way of saying that the burden of proving negligence is upon the plaintiff. If the plaintiff in such an action establishes violation of a statute by uncontradicted evidence, free from suspicion, he would be entitled to a peremptory instruction, and the so-called presumption of due care would avail the defendant nothing. But, if the defendant in this case had introduced no evidence bearing on the question of agency, then, under the presumption theory, the plaintiff would have been entitled to an instruction that the operator of the automobile was the defendant's agent, who was acting within the scope of his authority, and that the defendant must respond for his negligence.

Now, since a presumption is evidence, the fault which the specially concurring opinion finds with the opinion of the court would be present no less were we to abandon the doctrine of the Judson case. We would still be weighing evidence.

In my opinion, however, we do nothing of the sort in either case. For the inference of agency from the fact of ownership is a slender reed upon which to lean; a species of evidence so weak that in any intelligent system of law it must yield to facts established by evidence which only an arbitrary judgment would reject. Such is the character of evidence produced by

the defendant in the instant case. In the face of that evidence, there is, as the opinion of the Chief Justice holds, no deduction to the contrary which "the reason of the jury" could draw.

Even where the doctrine of *stare decisis* is not strictly applicable, stability of judicial decision is in itself a desirable end; and something is gained by a court adhering to a rule once deliberately established, which is not manifestly unsound, not lacking in support in the authorities, and not likely to be productive of injustice.

---

ROSSMAN, J. (specially concurring). In the result reached by the majority, I concur. But finding that my reasoning is somewhat different from theirs, I prefer to delineate mine.

The majority say that if A owns a car which was driven by B at the time it injured C, an inference is permissible that B was A's agent at that time. To warrant such an inference, A's ownership and B's possession must be deemed circumstantial evidence of B's agency. The results which come from circumstantial evidence are inferences. When enough circumstances tending to evince a muted fact are proved so that after all probabilities have been weighed, the fact may be inferred from them, we say that the conclusion is the result of an inference. Inferences are deductions. They are deductions and nothing else. They are not the result of law, but of logic. Accordingly, if A's ownership and B's possession authorize an inference that B is A's agent, then the circumstantial evidence just mentioned still exists at the close of the trial. Therefore, if a motion for a directed verdict is made, some

disposition must be made of the circumstantial evidence—it must either be believed or disbelieved. If it so happens that A, as a witness in his own behalf, swore that B was not his agent, his testimony is direct evidence submitted for the purpose of combating the indirect or circumstantial evidence. C may have good reason for distrusting the veracity of A, and yet have no means of discrediting him except so far as A's demeanor upon the witness stand repels confidence. Ordinarily, the conflict between circumstantial and direct evidence is an issue for the jury's determination. Accordingly, when the majority say that Parelius' motion for a directed verdict should have been sustained, they must first have weighed the evidence, both indirect and direct, and having found that the inferences drawn from the indirect (Parelius' bailment and Brown's possession) were much outweighed by the cogency of the direct evidence, they must have disregarded the indirect as unworthy of credit.

Let us see whether there are any other means of dealing with the situation.

If A owns a car which was driven by B at the time it injured C, any of the three following possibilities may be present: (1) The facts stated may be deemed circumstantial evidence warranting an inference that B was A's agent; or (2) recourse may be had to the well-established presumption that when owner and driver are not the same, the driver is presumed to be the owner's agent; or (3) the facts stated may warrant not only an inference but also a presumption that B was A's agent. See Wigmore on Evidence (3d ed.), sec. 2510a, and *Department of Water and Power v. Anderson,* 95 Fed. (2d), p. 577.

Inferences and presumptions (of law) are not the same. The former are the result of logic and of reason; the latter are creations of the law. They are creations of the law in much the same sense as are corporations. To avoid being misunderstood, it may be well to note that presumptions of fact and inferences are the same. They are merely different names for the same thing. A presumption of law is a legal device employed for the purpose of temporarily relieving a party of the necessity of proving a fact. As a stop-gap it fills the void and enables the party to get safely past a nonsuit. It exacts of his opponent the first evidence upon the subject. The expedient employed is a presumption that the disputed fact exists. Some presumptions find their justification in probabilities and human experience. Others are based upon a supposition that the adversary is better able to show the nonexistence of the fact, if it does not exist, than is the proponent able to prove its existence. For instance, most writings are truly dated; therefore, the law creates a presumption that each writing bears its true dating as a means of dispensing with proof—needless in most cases—and of thereby expediting the trial. Upon the other hand, the presumption that the driver was the owner's agent recognizes that in most instances an injured party is less familiar with the relationship between the driver and the owner than is the latter. The presumption that the driver is the owner's agent is, therefore, an expedient to exact of the party best able to prove the true relationship the first evidence concerning it. In this way the injured individual gets past a defendant's motion for a nonsuit. Presumptions, which are not based upon human experience, may have but slight tendency to point to the facts, yet they are as service-

able to the party favored by them as the others. An example is the presumptions concerning survivorship among persons who died in a common disaster.

Let us note further the difference between an inference and a presumption. The former, as already suggested, is a voluntary conclusion; the latter is a compulsory or mandatory conclusion. The law demands that it be indulged in. For instance, in a criminal case all concerned with it must presume the innocence of the defendant until the contrary has been shown. This presumption must be indulged in even though some infer the presence of guilt. Whenever presumptions and inferences, drawn from the same circumstances, conflict, the former prevail. Inferences and presumptions are different in another respect: an inference will be discarded only when shown to be unsound. But a presumption is only an expedient. It, therefore, vanishes when it has served its purpose. It is like a chrysalis which takes wings and is gone. Its purpose while it exists is to coerce the adversary to submit proof. When it has performed its full coercive mission it has become functus officio, and then the existence or the nonexistence of the questioned fact is ascertained by ransacking through the evidence.

Let us see whether there is a presumption created by the law that the driver is the owner's agent, and if there is such a presumption, let us see whether there is anything in our laws which prohibits us from employing it. In *Judson v. Beehive Auto Service Co.*, 136 Or. 1, 294 P. 588, 297 P. 1050, 74 A. L. R. 944, it is said:

"Among the disputable presumptions enumerated in the statute (sec. 9-807, Oregon Code 1930), we find none that a person in possession of an automobile is presumed to be acting as an agent of the owner and

for the latter's benefit. We, therefore, conclude that the prima facie case is based upon an inference and not a presumption.''

Wigmore on Evidence (3d ed.), in a footnote to sec. 2499, describes the California statute (C. C. P. 1872, sec. 1963), of which our above-cited law is a counterpart, as an enumeration of ''a number of standard presumptions'' thus indicating that the enumeration is not complete. Our statute, by preceding the enumeration with the words ''The following are of that kind'', indicates that the enumeration is only a partial compilation of the disputable presumptions. It is easy to recognize the absence from our statute of a number of well-established presumptions; for instance, the presumption that a child less than seven years of age is mentally incapable of committing crimes; the presumption of physical incapacity of a male less than fourteen years of age to commit sexual crimes; the presumption that vehicle is owned by the individual whose name is printed upon it; and the presumption that death resulted from an accident or natural causes rather than from suicide. Accordingly, the absence of the presumption under investigation from the list compiled in sec. 9-807, Oregon Code 1930, which is now sec. 2-407, O. C. L. A., is not determinative. Section 2510a, Wigmore on Evidence, (3d ed.), states that the driver of an automobile is presumed to be the agent of the owner; the section cites many decisions in support of the statement. Hence, such a presumption exists. The reasoning of Mr. Justice McCamant, in overruling the petition for a rehearing in *West v. Kern,* 88 Or. 247, 171 P. 413, 171 P. 1050, L. R. A. 1918D, 920, is a good portrayal of the presumption. Without resorting to more analysis, I state my belief that the law created in

favor of the plaintiff a presumption that Brown was Parelius' agent.

A presumption continues until overcome: sec. 2-405, O. C. L. A. The presumption in the present case enabled the plaintiff to escape a nonsuit; thus it performed one of its functions. Next, it coerced Parelius into taking the witness stand and delineating the circumstances concerning Brown and the car which the latter drove into collision with the plaintiff. From the evidence which thus came forth it appeared that neither Parelius nor Brown had the right to operate the car at the time of the accident. Parelius did not attempt to disprove the bases which had created the presumption (Parelius' bailment and Brown's possession), but, as just said, he established circumstances indicating that the owner of the car had prohibited its use and that Brown was not acting within the scope of his authority at the time he injured the plaintiff. This affirmative testimony was direct and positive. After this proof had been submitted, the plaintiff made no effort to refute it. Rather, he undertook to show that Brown at other times had endeavored to sell other cars —cars which Parelius owned. That proof, however, in no way affected the fact that the car which struck the plaintiff was not subject to sale at the time Brown took it. Therefore, Parelius' testimony concerning this car, which the Ladd Estate Company owned, was not questioned by the plaintiff. Under these circumstances, it seems to me that the presumption had exhausted itself. It no longer could avail the plaintiff anything. In short, it had disappeared from the case.

It is sometimes said that a presumption is evidence, and that, therefore, the presumptions germane to a

case must be submitted to the jury so that they can be placed in the scales of justice and be weighed with the proof. Section 2-401, O. C. L. A., which treats inferences and presumptions as "indirect evidence," is relied upon as support for that view. Whatever may be the merits of that treatment of presumptions, they have no application to this case. If Brown was Parelius' agent, his status as such would not be evidence. Rather, the fact of his agency, deduced from the evidence, would be a deduction, inference, presumption, or, better yet, a conclusion. Being a conclusion drawn from the evidence, it could not be evidence. It would be the product of the evidence. I conclude, the presumption had spent itself before the defendant moved for a directed verdict. As has been said, the same facts which create a presumption may sometimes warrant an inference. If presumption and inference are alike, the plaintiff is doubly fortunate. Under favorable circumstances, it may be that an inference can be drawn that the driver is the owner's agent. Such an inference might be very reasonable if the vehicle is of a commercial type. In the present instance, the car was not of a commercial character. The hour of its operation was past midnight. Brown had never sold a car. His principal duty was to operate the gasoline pump, to grease cars and each morning place the used cars on the used-car lot. An inference must have substance; it can not be based upon speculation. The facts supporting it must be substantial. The scintilla of evidence rule is not employed in this state. Time after time we have said that the verdict must be supported by substantial evidence. In *Consolidated Edison Co. v. National Labor Relations Board,* 305 U. S.

197, 83 L. ed. 126, 59 S. Ct. 206, Mr. Chief Justice Hughes said:

"The companies contend that the Court of Appeals misconceived its power to review the findings and, instead of searching the record to see if they were sustained by 'substantial' evidence, merely considered whether the record was 'wholly barren of evidence' to support them. We agree that the statute, in providing that 'the findings of the Board as to the facts, if supported by evidence, shall be conclusive,' means supported by substantial evidence. Washington, V. & M. Coach Co. v. National Labor Relations Bd., 301 U. S. 142, 147, 81 L. ed. 965, 970, 57 S. Ct. 648. Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Appalachian Electric Power Co. v. National Labor Relations Bd. (C. C. A. 4th) 93 F. (2d) 985, 989; National Labor Relations Bd. v. Thompson Products (C. C. A. 6th) 97 F. (2d) 13, 15; Ballston-Stillwater Knitting Co. v. National Labor Relations Bd. (C. C. A. 2d) 98 F. (2d) 758, 760."

In *National Labor Relations Board v. Columbia Enameling & Stamping Co.*, 306 U. S. 292, 83 L. ed. 660, 59 S. Ct. 501, Mr. Justice Stone said:

"Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. National Labor Relations Bd., 305 U. S. 197, ante, 126, 59 S. Ct. 206, supra, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. See Baltimore & O. R. Co. v. Groeger, 266 U. S. 521, 524, 69 L. ed. 419, 422, 45 S. Ct. 169; Gunning v. Cooley, 281 U. S. 90, 94, 74 L. ed. 720, 724, 50 S. Ct. 231. Appalachian Electric

Power Co. v. National Labor Relations Bd., supra (C. C. A. 4th), 93 F. (2d) 989).''

Circumstances can warrant the inference which the party requests to be drawn only when there is a logical and reasonable connection between the two; or, stated otherwise, the inference must be the probable and natural result of the circumstances.

When this cause was before us on a previous appeal (*Bunnell v. Parelius,* 160 Or. 673, 87 P. (2d) 230), we held that an inference was not warranted that Brown was Parelius' agent at the time of the accident. The facts in the present record are slightly different from those which were before us at that time. Some of them then had a greater tendency to prove an agency than those now before us. Possibly, by the process of speculation or guesswork, one could surmise that Brown was Parelius' agent at the time of the tortious conduct, but speculations, guesses and surmises are not the type of substantial evidence that is needed to sustain a verdict. The same reason that convinced this court before that an inference of agency could not be drawn from the evidence convinces me now.

To conclude: The presumption which carried the plaintiff past a nonsuit subsequently disappeared. It had been displaced by facts which the plaintiff did not dispute. No inference favorable to the plaintiff was present at any time. Accordingly, the motion for the directed verdict should have been sustained.

I concur in the result reached by the majority. The above are my reasons.