Argued April 11, affirmed May 14, 1918.

## DE WAR v. FIRST NAT. BANK OF ROSEBURG.

(171 Pac. 1106.)

**Banks and Banking—Liability for Deposit.**

1. If a bank depositor authorized another to withdraw her money from the bank and lend it, she cannot recover the deposit from the bank, but if she did not so authorize the other, the character in which he got possession of the deposit, whether as president of the bank or as a common burglar, is immaterial as to the bank's liability to the depositor.

**Banks and Banking—Withdrawal of Deposit—Question for Jury.**

2.   In a bank depositor's action to recover her deposit, whether the depositor authorized the president of the bank to withdraw her deposit and lend it *held* for the jury on conflicting testimony.

**Banks and Banking—Depositor's Action—Evidence.**

3.   In such action a schedule consisting of a tabulated list of promissory notes taken over from defendant bank by another bank, including a note for $5,000, signed by the person to whom it was claimed plaintiff depositor authorized the president of the bank to lend her deposit, was inadmissible as immaterial.

**Appeal and Error—Harmless Error—Evidence.**

4.   The admission of such evidence was harmless to defendant bank, being free from probative value.

**Trial—Instructions Outside Issues.**

5.   Instructions outside the issues were properly refused.

**Trial—Instructions—Repetition.**

6.   Requested charges whose substance was fully given to the jury by the court in its own instructions were properly refused.

**Trial—Instruction—Evidence.**

7.   In a bank depositor's action to recover her deposit, the bank's requested instruction that, if the jury found that when it was claimed plaintiff's money was loaned by the bank's president to another, and for some time thereafter, plaintiff was looking to the president to collect the interest and the principal, and made no application to the bank or any of its officers other than the president for the return of the money, that would be a circumstance the jury would have a right to consider bearing on the question of the bank's liability, was properly refused as advising the jury of the effect of particular acts which constituted the cynosural facts of the case.

**Principal and Agent—Ratification—Knowledge.**

8.   The principal's acts relied on to establish ratification must have been performed with full knowledge of what had been done by the agent and of the surrounding facts and circumstances.

**Trial—Instructions—Summarizing Evidence.**

9.   It is not a part of the duties of trial courts to summarize the evidence as viewed from the conflicting viewpoints of the adversary parties.

**Appeal and Error—Harmless Error—Instruction—Summarizing Evidence.**

10.   In a bank depositor's action to recover her deposit, the trial court's instruction, which did not purport to instruct the jury on any question of law involved in the controversy, but was merely a fragment of the court's summary of the evidence, as viewed from the conflicting viewpoints of the several parties, although disapproved, was not reversible error.

**Banks and Banking—Action by Depositor—Instruction.**

11.   In a bank depositor's action to recover her deposit, where the bank claimed that plaintiff had authorized its president to withdraw

her deposit and lend it on her behalf, plaintiff's testimony, on the question of the president's authority to act for her, that she told him she would not mind putting her money out on interest if she could get good security, etc., justified the language of an instruction stating the basic principle that not even the president of a bank can withdraw a depositor's money without authority, and that, if he does so, the bank will be held liable for his wrongful act.

[As to the liability of a bank for the fraud of its officers, see note in 39 Am. Rep. 760.]

**Banks and Banking—Withdrawal of Deposit—Authority of President.**

12. The president of a bank cannot withdraw the money of a depositor without her authority, and the bank is liable for his wrongful act in doing so.

From Douglas: JAMES W. HAMILTON, Judge.

Department 1.

This is the second appeal in this case. The pleadings are set out at length in the opinion of this court in the former appeal, and it is therefore unnecessary to repeat them here: *De War* v. *First National Bank,* 80 Or. 260 (156 Pac. 1038). Upon the first trial there was a verdict and judgment for plaintiff from which defendant appealed, and the judgment was reversed and the cause remanded for a new trial which has been had, resulting as before, and defendant again appeals.

AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Oliver P. Coshow.*

For respondent there was a brief and an oral argument by *Mr. Benjamin L. Eddy.*

BENSON, J.—1, 2. The issues made by the pleadings are very simple and clear. The complaint alleges a deposit of money in the defendant bank and the refusal of the latter to repay it upon demand.

The answer denies the allegations of the complaint, and then pleads two affirmative defenses, the first of

which is, that the plaintiff authorized T. R. Sheridan, as her agent, to withdraw $3,000 of her deposit and lend it for her, which he did, to one A. M. Kelsay, taking the latter's note therefor, which was afterward delivered to plaintiff at her request. The second defense is a plea of estoppel based upon a letter written by the federal bank examiner, R. W. Goodhart, to plaintiff, which is fully discussed in the former opinion herein, and will not now receive further notice.

The reply admits that Sheridan, who was president of defendant, withdrew plaintiff's money, but denies that he had any authority for such action. It will therefore be observed at once, that since the plea in estoppel was eliminated by the former opinion in this case, *De War* v. *First National Bank,* 80 Or. 260 (156 Pac. 1038), there remained but one fundamental issue in the pleadings, which is: Did the plaintiff authorize T. R. Sheridan to withdraw her money from the bank and lend it? If she did, she cannot recover in this action. If she did not, then the character in which he withdrew it is of no consequence, and whether he got possession of it in his capacity as president of the bank, or as a common burglar, would not in any degree affect the bank's liability to its depositor. Upon this issue the plaintiff testifies quite positively that she did not authorize Sheridan to withdraw her deposit, while he with equal certainty asserts that she did. This presents a question exclusively for the determination of the jury, which by its verdict has decided the issue in favor of plaintiff. In the light of this situation let us consider the assignments of error.

3, 4. Defendant urges that the court erred in the admission in evidence of the contract of sale between the defendant and the Douglas National Bank. The record discloses that the offer was expressly limited

to a page of the exhibit called "schedule D" consisting of a tabulated list of promissory notes taken over by the latter bank, including a note for $5,000, signed by A. M. Kelsay. The document is undoubtedly immaterial, without any remote tendency to establish any of the issues in the case, but it is apparently so free from any probative value as to be harmless.

5. It is next urged that the court committed error in refusing six several instructions requested by the defendant. Those numbered 1 and 6 are to the effect that national banks have no authority to lend money for other than themselves, and that if Sheridan loaned her money he did it as her agent, and not as president of the bank. As to these instructions it is enough to say that there is no issue upon the question of the bank having loaned plaintiff's money, and being outside of the issues, they were properly refused.

6. Regarding the requested charges numbered 3 and 4, it may be said that the substance of both of them was fully given to the jury by the court in its own instructions.

7. The requested instruction No. 5 is as follows:

"If you find from the evidence that at the time it is claimed the plaintiff's money was loaned by T. R. Sheridan to A. M. Kelsay, and for sometime thereafter the plaintiff was looking to Mr. Sheridan to collect the interest and the principal and return the same to the plaintiff, and that she made no application to the defendant or any of its officers other than Mr. Sheridan for the return of such money, principal or interest, that would be a circumstance which you would have a right to consider bearing upon the question of defendant's liability."

This paragraph represents a class of requests which has been condemned by this court many times. In

*Saratoga Inv. Co.* v. *Kern,* 76 Or. 243 (148 Pac. 1125), this court says:

"The law neither raised nor declined to draw an inference from the transactions alluded to by the court, and it was error to advise the jury of the effect of particular acts which, because of the nature of the controversy, constituted the cynosural facts, when there was evidence in the case which could rightfully be considered in the same relation."

The cases there cited may be profitably examined upon the same subject. The request was properly refused.

8. The instruction numbered 7, which goes to the question of ratification of the alleged agent's acts, is subject to the same criticism and the further one, that it omits an essential feature of ratification, which is, that the acts which are relied upon to establish ratification, must have been performed with full knowledge of what had been done, and of the surrounding facts and circumstances, and it was not error to refuse it.

9, 10. It is also urged that the court erred in giving three specified instructions, the first of which is as follows:

"It is claimed also in this case that the evidence tends to show that the transaction by Sheridan was fraudulent in its nature; that is, that he, as president of the bank, had control of plaintiff's money and that he used this position—that is, the president of the bank—in getting this money out without her authority, and that he loaned it or gave it over to a person who was worthless, financially insolvent, and that the money was turned back into the bank, crediting a worthless or poor account in the bank, and it is claimed that this was a fraud upon the plaintiff and that it was only a means or device used by Sheridan, using his position there in the bank, to get plaintiff's money."

Defendant contends that this portion of the charge instructs the jury upon the subject of fraud, and that it is erroneous because fraud is not pleaded. The court preceded this paragraph in his address to the jury with the following:

"The court will call your attention to what is claimed by the respective parties to be the evidence in this case, gentlemen, not for the purpose of telling you what the facts are, or giving you any impression of the court as to the facts, but in order that you may better apply the law as the court shall give it to you upon the facts as they appear in this case, or as you may find them to appear. You are the judges of the facts, entirely. It is only the duty of the court to instruct you as to the law applicable to the facts."

It will be seen that the paragraph which is challenged does not purport to instruct the jury upon any question of law involved in the controversy, but merely to be a fragment of the court's summary of the evidence as viewed from the conflicting viewpoints of the adversaries. It is unfortunate that trial courts should indulge in this practice. It is in no sense a part of their duties, and we wish to record our disapproval, but in *State* v. *Brown,* 28 Or. 147 (41 Pac. 1042), it was held not to be reversible error, and this view has never since been abandoned.

11, 12. It is next urged that it was error to give the following instruction:

"I further instruct you that in this case if you find from the evidence that the plaintiff authorized the defendant bank through its president to find a good loan or loans for the plaintiff, that fact would not of itself authorize the president of the bank to sign the name of the plaintiff to a memorandum check or other check withdrawing plaintiff's funds from the bank or transferred it to the credit of another. No one could lawfully withdraw plaintiff's funds from the bank or transfer them to the credit of another unless expressly

authorized so to do, and if her funds were so withdrawn or transferred without plaintiff's authority by T. R. Sheridan, as president of the defendant bank, then the bank itself is chargeable with knowledge of the fact that Sheridan had no such authority for the reason that the knowledge, as president of the bank, was the bank's knowledge, and his act was the act of the bank.''

Defendant argues that this is misleading in that it tends to impress upon the jury that the plaintiff authorized the bank, through its president, to find a loan, and that the bank is chargeable with the acts of Sheridan as its president, and that it is contrary to the evidence. The testimony of the plaintiff upon the question of authority is as follows:

''I happened to be in the bank and we were talking —we got started to talking about the money and I will not say, or could not say how it was, but he advised me to put it out on interest. He said it is laying there and not doing any good and I told him I would not mind putting it out on interest, provided I could get good security and where it was perfectly safe and he said, 'We are having calls every day, where it is just as good as gold' and they could put my money out and there was nothing stated then—I told him I would not put it anywhere without consulting my husband and only for a short time if I put it out at all and I must have good security; and I considered good security would be a mortgage on some property, that it would be equal or better than the value of the amount.

''Q. Did you tell Mr. Sheridan at that time or at any other time that he might draw your money out and make a loan?

''A. No, sir, I supposed if we come to an agreement, I would have to take the money out.

''Q. Did you ever take it out?

''A. No, sir, I never did. I never was asked to.''

This testimony in our opinion justifies the language of the instruction, which, as a whole, simply states

the basic principle, that not even the president of a bank can withdraw the money of depositor without her authority, and that if he does so, the bank will be held liable for the wrongful act of its officer. The instruction is not erroneous.

Defendant also challenges the correctness of the following paragraph of the charge:

"I instruct you that if defendant, through its president, undertook to find a good loan for plaintiff and then, without further authority, said president transferred plaintiff's funds to another account for the use and benefit, in full or in part, of the president of the defendant bank, defendant is still liable for any deposits of plaintiff's so transferred; unless you should find that plaintiff, with full knowledge of the facts, has ratified or sanctioned such transfer of funds, and that bears upon the question of ratification; you are to bear in mind the instructions already given you upon that subject."

What has been said about instruction No. 9 is a sufficient answer to the criticism of this instruction. Finding no reversible error in the record, the judgment is affirmed.    AFFIRMED.

McBRIDE, C. J., BURNETT and HARRIS, JJ., concur.

---

Motion to dismiss appeal denied December 18, 1917.
Argued on the merits May 7, affirmed May 21, 1918.