Argued September 27; reversed October 11, 1938

BROWN *v.* FIELDS ET AL.

(83 P. (2d) 144)

*L. A. Recken,* of Portland (Senn & Recken, of Portland, on the brief), for appellants.

*K. C. Tanner,* of Portland (Green, Tanner & Boesen, of Portland, on the brief), for respondent.

BELT, J. This is an action to recover damages for personal injuries resulting from a collision between an automobile in which plaintiff was riding and one driven by Charles Walsborn and owned by the defendants doing business under the name of Fields Motor Car Company. From a judgment in favor of the plaintiff, the defendants appeal.

The principal question for review is whether there is any substantial evidence to support the judgment. Did the court err in denying defendant's motions for a nonsuit and a directed verdict? In view of such assignment of error, the statement of facts will be made in the light most favorable to the plaintiff.

The defendants as co-partners were engaged in the business of selling new and second-hand automobiles in the city of Portland. According to the theory of plaintiff, Charles Walsborn, a young man 18 years of age who was a prospective purchaser of an automobile, went to the Fields Motor Car Company's place of business and was given permission to "test out" one of the cars which the company had for sale. Young Walsborn was accompanied by his older brother Alfred who was 24 years of age. Defendants contend that their salesman dealt only with the older brother but we are not concerned with such conflict in the evidence. No inquiry was made by defendants as to the experience

or competency of Charles Walsborn to drive a car, although it appears from the record that Charles, at such time, had not only an operator's license but a chauffeur's license permitting him to drive automobiles on the streets and highways of the state of Oregon.

After the automobile was inspected and the terms of sale were discussed, the car was driven away from defendant's place of business by Alfred who was accompanied by his brother Charles. No representative of the defendants went along to demonstrate the car or to exercise any control or supervision over the manner in which it was to be driven. Alfred drove the automobile about two blocks to a place where his own car was parked, whereupon the younger brother took possession of the defendant's automobile and proceeded to take some of his young friends on a pleasure ride on the Evergreen Highway along the north bank of the Columbia river in the state of Washington. Defendants assert that the car was turned over to Alfred with the express understanding that he was to "show it to his folks" and then return it, but that again involves a question of fact as there is a conflict in the evidence in reference thereto. We shall therefore assume that there was no such limitation upon the use of the car. While Charles was returning home, a collision occurred on the highway between the car he was driving and the automobile in which plaintiff was riding with her husband, resulting in the injuries of which she now complains.

Under such factual situation we fail to see wherein there could be any liability against the defendants. Young Walsborn, in driving the car, was not acting as agent for the defendants. Neither did they have any control or supervision over the manner in which the car was being driven. The uncontradicted evidence

discloses the status of bailor and bailee and not that of principal and agent or master and servant. The authorities are numerous supporting the proposition that, where an automobile is turned over, by an owner, to a prospective purchaser who drives it for the purpose of testing it out, the relationship of bailor and bailee is created and the doctrine of respondeat superior has no application: *Kantola v. Lovell Auto Co.*, 157 Or. 534 (72 P. (2d) 61); *Hamp v. Universal Auto Co.*, 173 Wash. 585 (24 P. (2d) 77); *Bertrand v. Mutual Motor Co.*, (Tex.) 38 S. W. (2d) 417; *Harts v. Raney*, 202 N. C. 807 (164 S. E. 321); *Harris v. Whitehall Chevrolet Co.*, 55 Ga. App. 130 (189 S. E. 392); *Graham v. American Employers' Insurance Co.* (La), 171 So. 471. It is equally well settled in the absence of statute to the contrary that the bailor cannot, under such circumstances, be held liable to some third person for the negligence of the prospective purchaser unless the bailor knew or had reasonable grounds for believing that the prospective purchaser was so careless, reckless and incompetent that injury to others might reasonably be anticipated from his operation of the car. See above authorities and cases in notes 36 A. L. R. 1148 and 100 A. L. R. 923.

We are not unmindful that plaintiff alleged in her amended complaint that defendants, at the time this car was turned over to Charles Walsborn as a prospective purchaser, knew, or in the exercise of reasonable diligence, ought to have known that he was "not sufficiently experienced or schooled in the operation thereof". The evidence, however, does not tend to support such allegations. In fact, the record tends to show just the opposite state of facts. Here is a young man in possession of an operator's license and a chauffeur's license, either of which is prima facie evidence of his competency to drive an automobile on the public

highways. There is no evidence tending to show that he was either physically or mentally incapacitated nor was there any indication of intoxication. Can it be that the automobile dealer, in order to transact business, must, under such circumstances, conduct an examination to determine the competency of its prospective purchasers to drive? Unless there are facts and circumstances which might reasonably put the dealer on inquiry, he is not obliged to test the competency and skill of his customer before entrusting him with an instrumentality which, even though it may become highly dangerous by reason of its improper use and operation, is not inherently dangerous. In the absence of knowledge to the contrary, we think the dealer may rely on the license as evidence of the competency of the driver: 5 American Jurisprudence, p. 697, § 356; *Neubrand v. Kraft,* 169 Iowa 444 (151 N. W. 455, L. R. A. 1915D, 691) ; *Saunders Drive-It-Yourself Co. v. Walker,* 215 Ky. 267 (284 S. W. 1088) ; *Owens v. Carmichael's U-Drive Autos, Inc.,* 116 Cal. App. 348 (2 P. (2d) 580). We conclude that the only reasonable deduction to be made from the evidence is that the defendants had no reasonable ground for believing that Charles Walsborn was incompetent to drive the automobile and, since the relationship of bailor and bailee existed, the defendants are not liable.

Plaintiff, however, urges that, by reason of the ownership of the automobile, a prima facie case of agency had been established and the court had no right to preclude the jury from passing on such issue. We see no merit in this contention. The pleadings and the proof disclosed beyond question the status of bailor and bailee. In view of such state of the record it would be absurd to hold that a jury could be permitted to find a verdict against the defendants on the theory of

agency. We agree that, ordinarily, it is a question for the jury to determine whether the evidence refutes or overcomes the inference of agency which arises by reason of the ownership of the automobile. However, this court, beginning with *Judson v. Bee Hive Auto Service Co.*, 136 Or. 1 (297 P. 1050, 74 A. L. R. 944), has consistently held that when the only reasonable deduction to be made from the evidence is that the automobile was not being driven in furtherance of the interests of the owner, but for the exclusive use and benefit of the person in possession thereof, it becomes incumbent upon the court to so declare as a matter of law: *Miller v. Service and Sales, Inc.*, 149 Or. 11 (38 P. (2d) 995, 96 A. L. R. 628); *Steele v. Hemmers*, 149 Or. 381 (40 P. (2d) 1022); *Kantola v. Lovell Auto Co.*, supra.

Counsel for plaintiff relies upon *Miller v. Service and Sales, Inc.*, supra, and argues that it cannot be reconciled with the Kantola case which was decided after the instant cause was tried in the lower court. We see no conflict between the two cases. In the Miller case the evidence, although uncontradicted in many particulars, was clouded with uncertainty and improbability. Hence, whether the inference of agency had been overcome was a question for the jury. In the instant case, the evidence is clear, convincing and conclusive that the status of bailor and bailee existed.

Defendants were entitled to a directed verdict. It follows that the judgment is reversed and the action dismissed.

BEAN, C. J., and ROSSMAN and KELLY, JJ., concur.