Argued November 9; affirmed December 30, 1943

JASPER *v.* WELLS ET AL.

(144 P. (2d) 505)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, LUSK, BRAND and HAY, Associate Justices.

*Borden Wood,* of Portland (McCamant, King & Wood, of Portland, and Charles W. Halderman and Frank C. Hesse, both of Astoria, on the brief) for appellant.

*James Arthur Powers,* of Portland (Norblad & Norblad, of Astoria, on the brief) for respondent.

■ BRAND, J. The allegations of negligence and proximate cause having been admitted, as well as the ownership of the car by the defendant Wells, the plaintiff offered evidence only upon the issue of damages and then rested his case in chief without offering any testimony whatever on the issue of agency. The admission that the car was owned by Wells established a *prima facie* case of agency under the decisions of this court, to which reference will later be made. Accordingly, the defendant went forward with the evidence and expressly denied that Dake was acting as his agent or was authorized to take the car for any purpose. The question on this appeal is whether the court erred in entering judgment for Wells notwithstanding the verdict.

The evidence may be briefly summarized as follows: The defendant Wells was engaged in logging operations near Timber, Oregon, under a contract with C. E. Powell. Dake was one of the employees of the defendant Wells and was working as a loader in the camp. On Friday evening, June 26th, 1942, the camp closed down for the week-end. At that time a conversation occurred between Dake, Wells and one Sheldon. It was agreed that Sheldon was to go to the camp on Sunday morning, the 28th of June, to repair the signal horn on the yarder engine. Dake expressed the intention of going hunting and arranged to borrow a rifle from Wells for that purpose. Dake received permission to ride with Sheldon, who was to drive Wells' car to the camp on Sunday morning for the purpose indicated. On Friday evening, Dake rode with the defendant

Wells to Jennings Lodge in Clackamas County and returned the pick-up truck to Gales Creek where Wells had been accustomed for some time to keep the truck. Gales Creek was on the highway a few miles northwest of Forest Grove. Glenwood is on the same highway a few miles north of Gales Creek. Glenwood lies at the junction of two highways; one, the Wilson River Road, runs from Glenwood west and southwest to Tillamook, and the other runs northerly through Timber and westerly along the Wolf Creek Road to Necanicum in Clatsop County. Both the Wilson River Road and the Wolf Creek Road connect with the north-south coast highway. On Sunday, June 28th, Dake expected to meet Sheldon at Gales Creek and ride with him to the camp where Sheldon was to work and where Dake planned to hunt. Sheldon, however, failed to arrive. Dake took Wells' pick-up truck, drove through Glenwood and thence a few miles westerly to the camp, which is about four miles off the Wilson River Road. He completed his hunting with a degree of success, concerning which he was prudently reticent (the month being June) and returned in the pick-up truck to Gales Creek where he ate lunch. That done, he again took the car and again drove to Glenwood and out the Wilson River Highway toward Tillamook. On the road he encountered two girls and a man. He invited them to ride. One of the girls sat in the front seat with Dake. The other girl and the man sat in the back of the pick-up. Referring to his companion in the front seat, Dake testified as follows:

"I asked her where they were going. She said they were going to Tillamook. I said I guessed I would go to Tillamook too. I went over to Tillamook with them. After we got to Tillamook I drove down to my Uncle's place, down there for awhile, then

we started out. I said, 'Well, I am going to be back over to Gales Creek; if you folks want to go with me we will go around the other way, and come up through towards Seaside and across,' so that is the way we came.''

After visiting for a time in Tillamook, instead of returning by the Wilson River Road, the party drove northerly on the coast road as far as Twin Rocks. At that place they went down to the beach and ''stayed there for a while'' and did a ''little bit'' of drinking. It appears that they then drove northerly to a junction of the Wolf Creek Highway and started back toward Gales Creek by that road. The fatal collision occurred at a point on the Wolf Creek Highway.

The evidence given by the defendant Wells was direct, repeated, positive, without contradiction or impeachment and may be summarized as follows: Dake was in the general employ of Wells as a top loader in the camp. He was not in the employ of Wells on Sunday, the 28th of June, nor was he authorized, directly or indirectly, to take the truck on that day for any purpose. Dake had no business of Wells to perform on that day. Wells never allowed the men to use the truck without special permission, of which fact Dake was aware. Dake had never, to Wells' knowledge, used the truck unless Wells told him to do so as a part of his work, in and near the camp. Wells had given Dake special permission the previous summer to use the truck for a hunting trip over private roads only. Dake had not, to his knowledge, used the truck for any such purpose since that time. Wells had no knowledge that Dake was going to take the truck on Sunday, the 28th, or that Dake was going to Tillamook on that date.

Dake's testimony was to the same effect, namely, that he drove the truck without Wells' permission or

knowledge. The trip to Tillamook was for his own pleasure. He had no purpose relating to Wells or to Wells' business in going on the trip. There is not a hint of conflicting testimony as to what Dake actually did or where or with whom he went.

Albert Brown, who was with the deceased at the time of the collision, was called by the plaintiff, and he testified concerning the good character and ability of the deceased, but he gave no evidence concerning the locale of the collision. If there had been any question concerning the persons present at the collision or the place where it occurred, Brown would surely have testified on those matters.

■ On the issue of agency, the plaintiff rests his case upon the inference which arises from ownership and seeks to support that inference by further contentions now to be noticed. First, there is an attempt to show that there was an understanding that Wells was to share in whatever game might be killed on the hunting trip, from which, the plaintiff argues, a further inference of agency might arise. We think there was no substantial evidence of such an agreement or understanding, but even if there were it would not aid the plaintiff. The hunting trip was ended, and the car had been returned to the place from whence it had been taken before the fatal journey was begun. The trip to Tillamook in the afternoon was an entirely independent transaction having nothing to do with the hunting trip in the morning.

Plaintiff next contends that the following circumstances constitute evidence that Dake was acting as the agent or servant of Wells and in the course and scope of his employment at the time of the collision. Wells was short a high climber and a rigging slinger and therefore

desired one or two new men to fill out his crew. Dake
was aware of this fact. Wells had told the men to "tell
anybody to come and see me" if they found a man to
fill the job. Dake had a cousin whose home was in Til-
lamook and who had worked with him "three or four
days several years ago" on a different job. Wells had
no knowledge of this fact. Dake testified:

"Q Did you have any purpose in going over
there, any business relations with Mr. Wells or for
Mr. Wells or for his business, in any way, shape or
form whatsoever?

"A No.

"Q Purely a pleasure trip of your own?

"A Yes, in a way it was.

"Q Well, was it in any other way?

"A No, well, I did think about a cousin of mine
that he could go to work there if he wanted to, but I
never said anything to Mr. Wells about it; I was
going to tell Mr. Wells that he would go to work for
him.

"Q Were you authorized to speak, did Mr.
Wells ever authorize you to speak to him?

"A He never knew of him.

"Q That was just in your own mind then?

"A Yes.

"Q You didn't go over there for that purpose?

"A No, not especially."

While at or near Tillamook, Dake went to the home of
Mr. Albert Nelson, his uncle. On cross-examination,
Dake testified as follows:

"Q I understood you to say that in a way it was
a pleasure trip going up to Tillamook, in a way,
what do you mean by saying 'in a way it was a
pleasure trip?'

"A Well, the whole thing was on my account,
and then I figured maybe my cousin was out of

work, I could get him a job, have him come over and help Mr. Wells, if Mr. Wells didn't have a man he would put him on.''

At the home of Mr. Nelson, Dake asked for his cousin, Mike, but discovered that Mike was working in the ship yard. Dake told Nelson that he had a position for Mike and that there was a labor shortage at the camp. The foregoing constitutes the substance of the testimony on which plaintiff relies as supporting the bare inference of agency which arose from proof of ownership of the car.

■ The burden of proof of agency was on the plaintiff, but the plaintiff is confronted by an uncontradicted defense of a two-fold character. Dake was not authorized to go to Tillamook on the business of the defendant Wells, nor was he authorized to take the car for any purpose. The plaintiff seems to assume that if Wells had permitted Dake to take the car on a pleasure trip there would be some evidence of agency, but if, contrary to the proven facts, Wells had loaned the car to Dake for the very trip which Dake took, Dake would have been a bailee and not a servant, and his negligence would have imposed no liability on Wells. Restatement of the Law of Agency, § 238, comment a. The plaintiff had a double burden, first, to show a permission to take the car, and, second, to show that it was being used in the business of the defendant Wells. If, as we think, the undisputed evidence discloses that Dake had no duties to perform at Tillamook, then it is doubly clear that he had no duty to perform for Wells on the trip north on the coast highway, on the beach at Twin Rocks, nor on the circuit over the Wolf Creek Highway at the scene of the accident.

■ We come to the application of the rule set forth in the leading case of *Judson v. Bee Hive Auto Service Co.,* 136 Or. 1, 294 P. 588, 297 P. 1050, 74 A. L. R. 944 (1931), and in later cases which have applied and extended that doctrine. We have recognized that in an action for damages for the negligent operation of an automobile, proof of ownership raises an inference of fact that the driver was operating the car as the agent or servant of the owner and was at the time of the negligent act in the course and scope of his employment as such agent or servant.

> "That the conclusion, to the effect that the operator of an automobile owned by another is the agent of the owner and acting within the scope of such agency is a deduction from the facts proved, cannot be questioned. That it is made by the reason of the jury and that there is no law expressly directing such deduction to be made is equally apparent.

> "Under the statutory definition of presumption, the deduction just mentioned is merely an inference and is not a presumption." *Bunnell v. Parelius,* 166 Or. 174, at p. 178, 111 P. (2d) 88 (1941).

Thus it is that in an action against an owner who was not the driver, proof of ownership raises a *prima facie* case of agency, and in the absence of evidence to the contrary the case is carried to the jury upon that issue. As said in *Bunch v. Standard Oil Co. of California,* 144 Or. 1, 23 P. (2d) 328 (1933),

> "In order to avoid the consummation of an injustice, and when the facts are peculiarly within the knowledge of the opposite party litigant, the courts have relaxed as to the quantum of proof required of plaintiff to entitle him to have his case submitted to

the jury, in the absence of any evidence on behalf of the defendant.''

Notwithstanding the fact that indirect evidence is defined as including inferences (O. C. L. A. 2-401), we have held that where the plaintiff has the burden of proof of agency and relies solely upon the inference which arises from proof of ownership, evidence offered by the defendant in contradiction of the inference of agency may sometimes be of such a conclusive character as to require the court to direct a verdict for the defendant. *Judson v. Bee Hive Auto Service Co.,* supra; *Lehl v. Hull,* 152 Or. 470, 53 P. (2d) 48, 54 P. (2d) 290 (1936); *Kantola v. Lovell Auto Co.,* 157 Or. 534, 72 P. (2d) 61 (1937); *Brown v. Fields,* 160 Or. 23, 83 P. (2d) 144 (1938); *Bunnell v. Parelius,* 166 Or. 174, 111 P. (2d) 88 (1941); *Allum v. Ball,* 168 Or. 577, 124 P. (2d) 533 (1942).

5-7. The quality and quantity of evidence sufficient to overcome the inference of agency has been variously stated by this court.

''* * * if the evidence is of such character that but one reasonable deduction can be made therefrom the court may so declare as a matter of law. It is entirely reasonable that one inference may be drawn during one stage of the trial and a different one at a later time, after all the evidence is in the record.'' *Judson v. Bee Hive Auto Service Co.,* supra, 136 Or. at p. 14.

From the same case we gather that the evidence must be ''clear, positive and uncontradicted.''

''* * * but when the actual relationship is disclosed by uncontradicted testimony and from the entire record no reasonable deduction of agency can be made, the inference of agency is without effect.'' *Lehl v. Hull,* supra, 152 Or. at p. 482.

"* * * when the only reasonable deduction to be made from the evidence is that the automobile was not being driven in furtherance of the interests of the owner, but for the exclusive use and benefit of the person in possession thereof, it becomes incumbent upon the court to so declare as a matter of law." *Brown v. Fields et al.*, supra, 160 Or. at p. 29.

"* * * it logically follows that if the reasonableness of such purported inference is absent, the inference itself is nonexistent." *Bunnell v. Parelius*, supra, 166 Or. at p. 180.

"* * * the inference of agency from the fact of ownership is a slender reed upon which to lean; a species of evidence so weak that in any intelligent system of law it must yield to facts established by evidence which only an arbitrary judgment would reject." *Bunnell v. Parelius*, supra, 166 Or. at p. 185 (specially concurring opinion of Mr. Justice LUSK).

In the case of *Allum v. Ball*, supra, the owner of a truck directed one Clement to take a Chevrolet coupe and go for a chauffeur's license. Finding the coupe locked, Clement disengaged the trailer from a log truck and with another man drove off in the cab of the truck. This court said:

"We cannot agree with plaintiffs that Clement acted reasonably in taking the truck when the only express permission granted him referred to the coupe."

*Allum v. Ball* is in some respects a stronger case for the plaintiff than is the one at bar. In that case permission was given to use a car but not the car which was taken. In the case at bar there was no permission to use any car. Yet, in *Allum v. Ball* judgment for the plaintiff against the owner of the truck was reversed by this court.

Proof that Dake was in the general employ of Wells does not of itself create an inference that a given act done by him was within the scope of the employment. 1 Restatement on the Law of Agency, § 288, Comment b.

∎ To be within the scope of the employment, conduct must be of the same general nature as that authorized or incidental to the conduct authorized. 1 Restatement on the Law of Agency, § 229. Dake was employed as a top loader. He was hired to perform physical labor. He was not authorized to employ men or to transact business for Wells.

> "Conduct of a servant is within the scope of employment only during a period which is not unreasonably disconnected from the authorized period." 1 Restatement of the Law of Agency, § 233, p. 520.

Dake had performed no service for Wells since the evening of Friday, June 26th. There was no claim that he was receiving or was entitled to receive any pay on Saturday or Sunday, June 27th or 28th.

∎ Conduct is within the scope of employment only within a locality not unreasonably distant from the authorized area. Restatement of the Law of Agency, § 234, p. 524.

We think that the undisputed evidence shows that on this trip to Tillamook, thence to Twin Rocks, thence north on the coast highway and east on the Wolf Creek Highway, Dake was unreasonably distant from the authorized area of his employment.

> "An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed." 1 Restatement of the Law of Agency, § 235, p. 526.

After starting on his trip and having been influenced to go to Tillamook by the wishes of his lady guest, Dake may have intended to tell his cousin Mike of possible employment with Wells, but there is no evidence that he was authorized to employ him or that the cousin would have been employed or was employable. The suggested communication with his cousin was a mere afterthought. In short, the evidence discloses a perfectly clear picture of a day off, a borrowed car, a girl, a drink and a collision. Such a joy ride was not incidental to the logging business of the defendant Wells.

██ We think that the evidence was of such a character that but one reasonable deduction could be made therefrom and that the court was correct in entering judgment for the defendant Wells notwithstanding the verdict.

██ One other contention of the plaintiff requires brief notice. At the usual time motion was made by the defendant Wells for a directed verdict, and the court expressed the opinion that the motion should be granted. However, pursuant to Oregon Laws of 1941, Chapter 309, and at the request of the plaintiff, the court submitted the case to the jury with leave to the defendant Wells to move for judgment in his favor if the verdict should be otherwise than as would have been directed on defendant's motion for a directed verdict. The jury returned a general verdict for the plaintiff against both defendants and also made special findings upon questions submitted to them on the issue of agency. The special findings were in substance to the effect that Dake was driving at the time of the accident as the agent or servant of the defendant Wells and in the scope and course of his employment. De-

fendant Wells then moved for an "order and judgment setting aside the verdict rendered by the jury herein in favor of the plaintiff and against the defendant, Harold E. Wells, and for a judgment in favor of the defendant, Harold E. Wells," which motion was allowed by the court and judgment was entered accordingly. Plaintiff now argues that the motion was directed only against the general verdict and did not include the special findings and that therefore the special findings remain binding. It is argued that by reason of the defendant's failure to move to set them aside, he is now precluded from asserting that there was no substantial evidence to support the special findings. Our statute in part provides:

> "* * * when a motion for a directed verdict which should have been granted has been refused and a verdict is rendered against the applicant the court may, on motion, render a judgment notwithstanding the verdict, or set aside any judgment which may have been entered and render another judgment, as the case may require. In any case where, in the opinion of the court, a motion for a directed verdict ought to be granted, it may nevertheless, at the request of the adverse party, submit the case to the jury with leave to the moving party to move for judgment in his favor if the verdict is otherwise than as would have been directed." Oregon Laws of 1941, Chapter 309.

The position of the defendant Wells was made perfectly clear when he moved for a directed verdict before any issue had been submitted to the jury, and whatever right he then had was, under our statute, reserved for him if the verdict was "otherwise than as would have been directed." The court must have understood that the defendant intended to move both against the general and the special findings, and by entering judg-

ment for the defendant it did effectively set aside both. Judgment now stands in favor of the defendant Wells. The evidence is all before us. Since there is no substantial evidence on which any other judgment could be supported, the judgment as entered must be affirmed.

ROSSMAN, J. (specially concurring)

I concur in the result reached by the foregoing opinion, but believe that we ought not say that it is permissible to infer from the fact that a person who is driving a car which belongs to another is (a) the agent of the owner, and (b) acting within the scope of authority conferred upon him by the owner. I am willing to hold that a presumption—a legal presumption—of agency arises out of such a situation. There are very material differences between a presumption and an inference. The latter has enduring qualities; the former is a device of the law which, when it has served its function of getting a party past a nonsuit, disappears. A presumption is frequently something which is arbitrary; it is an assumption. Being an assumption, it takes a fact for granted, in the absence of knowledge concerning the assumed fact. In short, it is a step taken in the dark. But an inference is quite different. Unlike a presumption, which is the product of the law, an inference is the product of reason. There is nothing arbitrary about an inference. Between an inference and the fact from which it is drawn there must exist a logical connection. Laymen, lawyers, jurors, in fact everyone, draw inferences every day. Robinson Crusoe saw footprints upon the sand. Seeing them, he drew an inference—that a visitor was upon his island.

If we see a car being operated by someone who is not its owner, do we, as a matter of everyday reasoning, infer that the one in possession of the car is the

agent of the owner and that he is acting within the scope of authority that the owner delegated to him? I do not believe that anyone draws such inferences. The most that he does is to infer that the occupant of the car is in lawful possession of it. Suppose that A's eye was put out by the tip of an umbrella which was being carried by B. Suppose also that it should develop that the umbrella was owned by C. If those were the only facts before a court, would any judge permit the jurors to infer that B was C's agent and that at the time of the tort B was acting within the scope of authority that C had conferred? Lest it should be said that umbrellas are not frequently carried by non-owners, let us take as an illustration a typewriter. Typewriters are frequently operated by individuals who do not own them. Suppose one is being operated in some public place, as, for instance, in the lobby of a hotel and it then develops that the operator is not the owner of the typewriter. Would anyone infer that the operator is the agent of the owner and that he is operating it in furtherance of authority that has been conferred? In all such instances, the only permissible inference is that the person in possession is in lawful possession.

The automobile mentioned by the majority was a non-commercial vehicle. It was not a delivery car bearing the name of a concern which used it for commercial purposes. Commercial cars, and purported agents who dress in the livery of the concern which employ them, present facts different from the one before us.

It is apparent that the majority "infer" the agency in the present instance, not as the result of logic, but in order to promote utility or convenience. But administrative presumptions have been created by the law for

the purpose of serving the ends of utility and convenience. Administrative presumptions speed up the trial and exact the first proof upon selected issues from the party who is best able to come forth with the evidence upon those issues. Chamberlayne on Evidence, § 1185, states that a presumption of this character is

"practically a rule of convenience, largely within the administrative power of the court and the principal object of its employment is to facilitate and expedite trials, bringing the parties from the nonessentials of their dispute down to the essential. It is, as it were, a short method of ascertaining where lies the crux or hinge of the case. * * * It is entirely within the administrative control of the presiding judge, * * *."

Generally, a person who is run down by a car driven by a non-owner is not in a position to prove the relationship which actually existed between the driver and the owner. The latter, in most instances, can disprove the agency, if none in fact existed. Therefore, in instances of that kind, the law creates an administrative presumption of agency which enables the plaintiff to avoid a nonsuit. The presumption coerces the defendant into coming forth with evidence concerning the real relationship.

If, in the present instance, the facts before the court at the time when the plaintiff rested created an inference that the driver was the owner's agent, those facts, although contradicted later by evidence offered by the defendant, still existed when both parties had rested. Whether the facts for which the plaintiff vouched or those for which the defendant vouched reflected the truth was an issue for the jury's determination. As I have indicated, I do not believe that the facts for which the plaintiff vouched created an inference of agency. They afforded the basis for a presumption, but the

presumption disappeared when the defendant brought forth his evidence.

I realize that in the past this court has spoken as though an "inference" of agency arose out of facts similar to those before us. It has also employed the term "presumption." I think that the matter is of such importance that we ought to employ the true term. Our previous decisions do not foreclose us upon a matter of this kind. As I have said, a presumption, and not an inference, of agency arises under circumstances such as those before us.

The above is my reason. I concur in the result.

HAY, J., concurs in this specially concurring opinion.