Argued April 1; reversed April 29, 1947

# SUMMERVILLE *v.* GILLESPIE

(179 P. (2d) 719)

*George H. Brewster,* of Redmond (Cunning & Brewster, of Redmond, on the brief), for appellant.

*H. H. DeArmond,* of Bend (DeArmond, Goodrich & Foley, of Bend, on the brief), for respondent.

Before Rossman, Chief Justice, and Lusk, Belt, Bailey, Hay and Winslow, Justices.

WINSLOW, J. (Pro Tempore)

This is an action to recover damages for personal injuries resulting from a collision between an auto-

mobile in which respondent was riding and a truck operated by one A. A. Fausett and owned by Robert Gillespie, doing business as Central Oregon Fuel Co., the appellant herein. From a judgment in favor of respondent, appellant prosecutes this appeal.

There are several assignments of error, but, by virtue of the conclusion we have reached, it will be necessary to consider only one thereof—appellant's motion for a directed verdict. By this motion appellant raises the question as to whether there is any evidence in the record to sustain the verdict. This contention is based upon the proposition, as contended by appellant, that there is no evidence to show that Fausett was the agent of appellant in the operation of the truck at the time and place of the accident.

There is substantial evidence that appellant was the owner of the truck; that Fausett was in his employ; that appellant was engaged in the wood business at Redmond, Oregon, and at the time of the accident, December 8, 1944, was working on a war time basis; that the truck involved in the accident was used for the purpose of delivering slabwood; that the operator of the truck on the day shift would bring the truck to Fausett's residence in Redmond at about 6:00 o'clock in the evening where Fausett would take it, go to the mill and work from 6:00 o'clock until 3:00 in the morning; that his duties required him to haul wood from the bunker to the car or woodyard; that at the time of the accident Fausett lived at Sixth and A Streets in Redmond, Sixth Street being The Dalles-California Highway; that his route of travel from his residence to his work was "turn, drive around the block and go down A Street, and go east on A Street"; that Fausett had been engaged in this character of work

for appellant for some time prior to the accident; that on the evening in question the truck was left at Fausett's home at about 5:40 o'clock; that Fausett took the truck and, instead of going to work, drove the same north on The Dalles-California Highway to what is known as the Hinton place, where he kept a cow; that he drove the truck off the highway into a lane on the east side of the highway, milked and fed his cow, backed the truck out onto and across the highway intending to return home; and that it was while he was backing out, or just before he started forward, and while his truck was partly on the west side of the highway and partly on the west shoulder of the highway that the same was struck by the car in which respondent was riding.

In view of our disposition of this case, it will not be necessary to set forth a detailed description of the accident. Suffice it to say that both respondent and the driver of the car in which he was riding had just concluded work on a second continuous shift, had been drinking and were tired and sleepy. Respondent himself was asleep at the time of the accident, and the probability is that the driver of the car in which he was riding likewise fell asleep. The driver does not remember.

The record establishes that appellant did not know of the use which Fausett made of the truck upon the evening in question. Fausett had not sought or obtained permission to so use it. The record does show that some time prior to this he had sought and obtained permission to use it a few Sundays for the purpose of hauling hay for himself.

Respondent, in order to make his case, called both Fausett and appellant as witnesses. Fausett testi-

fied that, when the truck was left at his house that night, it was partly loaded with wood, "about two-thirds of a cord." He drove the truck in the same condition down to the Hinton place to milk and feed his cow, intending to return to his home to leave the milk and then to go to work. He testified:

"Q Now, had you gone to work that night at the time of the accident? * * *

"A No, I hadn't gone to work.

"Q At the time you were down there, at the time of the accident, were you doing anything for Mr. Gillespie?

"A No."

Appellant gave the following testimony:

"Q Mr. Gillespie, was Mr. A. A. Fausett in your employ on the 8th day of December, 1944?

"A No, he wasn't.

"Q He wasn't in your employ?

"A No."

Again:

"Q Well, he was on your payroll beginning at six o'clock that night wasn't he?

"A No, he wasn't that particular night.

"Q Why?

"A Because he never did go to work for me.

"Q If there hadn't have been an accident he would have been, wouldn't he?

"A Yes, he would have been if he hadn't have gone and milked the cow and had the accident he would have worked for me."

We shall now give consideration to appellant's fifth assignment of error. This assignment is predicated upon the contention that there was no evidence to show that Fausett was an agent of appellant; that, although

Fausett was in the employ of appellant generally, he was acting beyond the scope of his employment at the time and place of the accident; and that, therefore, there was no evidence upon which the jury could find that the truck was being driven by a servant of appellant while acting within the scope of his employment.

Respondent argues that the motion for directed verdict was properly denied for two reasons: (1) Because the admission by appellant that he owned the truck was *prima facie* evidence that the truck was being driven for him by his agent; and (2) because there was other evidence which aided and strengthened this prima facie case of agency growing out of such ownership.

This court has held many times, commencing with the cases of *Houston v. Keats Auto Co.,* 85 Or. 125, 166 P. 531, and *West v. Kern,* 88 Or. 247, 171 P. 413, 1050, L. R. A. 1918D, 920, that proof of ownership makes a *prima facie* case against the owner. The court in *West v. Kern* said:

> "This rule proceeds on the theory that the facts are peculiarly within the knowledge of the defendant and that he can easily furnish the necessary evidence to show that the vehicle was not being used for him, if such is the fact. If it be said that this rule occasionally imposes a hardship upon a defendant, the answer is that a less liberal rule would more frequently result in hardship to a plaintiff."

We have also held many times that this *prima facie* case of agency may be overcome as a matter of law by other evidence. *Jasper v. Wells,* 173 Or. 114, 124, 144 P. (2d) 505; *Crosby v. Braley & Graham, Inc.,* 171 Or. 72, 134 P. (2d) 110; *Allum v. Ball,* 168 Or. 577, 124 P. (2d) 533; *Bunnell v. Parelius,* 166 Or. 174, 111 P. (2d)

88; *Brown v. Fields,* 160 Or. 23, 83 P. (2d) 144; *Bunnell v. Parelius,* 160 Or. 673, 677, 87 P. (2d) 230; *Kantola v. Lovell Auto Co.,* 157 Or. 534, 72 P. (2d) 61; *French v. State Industrial Accident Commission,* 156 Or. 443, 455, 68 P. (2d) 466; *Lehl v. Hull,* 152 Or. 470, 474, 53 P. (2d) 48, 54 P. (2d) 290; *Judson v. Bee Hive Auto Service Co.,* 136 Or. 1, 294 P. 588, 297 P. 1050, 74 A. L. R. 944. See also notes, 96 A. L. R. 638; 74 A. L. R. 956; 42 A. L. R. 907.

■ When the other evidence is received, assuming the sufficiency thereof, this prima facie case is extinguished by merger. It is like a chalk talker's cartoon which first portrays some great dignitary; then, with but a few strokes of chalk, that likeness disappears entirely, and we see instead some other notable character of greater or less importance. So here, Fausett, appellant's employee, driving a truck partly loaded with wood belonging to his employer, presents one picture. Standing by itself unexplained, that picture portrays Fausett as appellant's agent acting within the scope of his authority. But when we add to this the fact that Fausett took the truck without authority, drove it to the Hinton place for the purpose of milking and feeding his own cow, intending to return to his own home to leave the milk before starting to work, we have an entirely different picture. It is hard to understand how anyone would even contend that, taking into consideration all these facts, there was any evidence of agency. The completed picture entirely disproves such a relationship. The second or completed picture has not destroyed the first. Fausett is still appellant's general employee driving his employer's partly loaded wood truck. But by a few strokes of evidence the picture is entirely changed, and it now

appears that he is driving it for himself and not for his employer. We therefore hold that the prima facie case of agency growing out of the ownership of the truck was entirely obliterated by the other evidence referred to above.

We shall now give consideration to respondent's second position. Counsel for respondent contend that the question as to whether a slight deviation by the employee from his employer's business to his own will relieve the employer of liability is a question for the jury. The first answer to that proposition is that here Fausett never entered the employ of appellant on the day of the accident. He elected to take appellant's truck and make this trip exclusively for his own benefit before commencing his employment that evening.

The case of *Riley v. Standard Oil Co., of New York,* 231 N. Y. 301, 132 N. E. 97, 22 A. L. R. 1382, is cited in support of respondent's contention. In that case a chauffeur regularly employed was directed to go to the freight yards of the Long Island Railroad about two and a half miles away, obtain some barrels of paint and return at once. After loading the paint, the chauffeur discovered some waste pieces of wood. He threw them on the truck and, on leaving the yard, turned not toward the mill but in the opposite direction. He took the waste pieces of wood four blocks away to the house of his sister and then returned on his way to the plant of his master. The accident occurred while he was returning from his sister's house. Three justices out of seven joined in a strong dissent even under that state of facts. Considering the different factual situation here, the case is not authority supporting respondent's position.

■ Commencing at page 1397 of the same report in 22 A. L. R. is an exhaustive note covering this subject. The cases throughout the United States are reviewed, and the editor gives this summary of the true rule: " * * * It is a well-established general rule that the owner of an automobile is not liable for injury or damage resulting from a negligent operation of his car by his employee while the latter is using it for his own purposes without the owner's permission or consent * * *." To the same effect, see Restatement, Agency §§ 237 and 238. See also 5 Blashfield, Cyclopedia of Automobile Law and Practice (perm. ed.) 212, § 3051.

In *Bunnell v. Parelius,* supra, (166 Or. 174, 111 P. (2d) 88), this court had occasion to consider a question very much akin to the question with which we are dealing here. An automobile belonging to the Ladd estate was damaged and was sent to the garage operated by Parelius to be repaired. Brown, an employee of Parelius, used the car for his own personal business, and, while so using it, had the accident out of which the litigation arose. There was proof that the car belonged to the Ladd estate. There was also proof that the Ladd estate had delivered the car to Parelius for the purpose of having the same repaired and that Parelius had expressly forbidden Brown the use of the car. The court held that the evidence was insufficient to sustain a recovery as against Parelius as bailee of the Ladd estate.

Respondent likewise cites the case of *Jasper v. Wells,* supra. In so far as the facts in that case may be applicable to this case, it is authority for the contrary contention. Dake was an employee of Wells but without authority took the pick-up truck of his employer and

used it for his own pleasure on Sunday. While so using it the accident occurred. There was an attempt to show that the employer was interested in the trip because of some conversation with reference to sharing in the game that might be obtained on a hunting trip. At page 122, the court said:

"* * * The plaintiff seems to assume that if Wells had permitted Dake to take the car on a pleasure trip there would be some evidence of agency, but if, contrary to the proven facts, Wells had loaned the car to Dake for the very trip which Dake took, Dake would have been a bailee and not a servant, and his negligence would have imposed no liability on Wells. Restatement of the Law of Agency, § 238, comment a. The plaintiff had a double burden, first, to show a permission to take the car, and, second, to show that it was being used in the business of the defendant Wells. If, as we think, the undisputed evidence discloses that Dake had no duties to perform at Tillamook, then it is doubly clear that he had no duty to perform for Wells on the trip north on the coast highway, on the beach at Twin Rocks, nor on the circuit over the Wolf Creek Highway at the scene of the accident."

Plaintiff's right of recovery was denied.

◼ It is asserted on behalf of respondent that appellant ratified and confirmed the relationship of master and servant between himself and Fausett by signing the accident claim to the Industrial Accident Commission, plaintiff's exhibit No. 4. The doctrine of ratification has as its foundation knowledge of all the facts. *Tilton v. Boland,* 147 Or. 28, 35, 31 P. (2d) 657; *Graef v. Bowles,* 119 Or. 498, 511, 248 P. 1090; *DeWar v. First Nat. Bank of Roseburg,* 88 Or. 541, 546, 171 P. 1106; *Turnham v. Calumet & Oregon*

*Mining Co.*, 58 Or. 453, 457, 112 P. 711, 115 P. 157. The accident report is dated December 28, 1944. The accident occurred on December 8th. In explanation of signing this exhibit, appellant gave the following testimony:

"Q When did you first learn that Fausett was not making a delivery of wood down there?

"A I first learned that when Mr. Brewster called me back to his office after we had been served with the subpoena that we were going to be sued. It was last spring some time.

"Q And how did you learn it then?

"A You informed me of it.

"Q Was Mr. Fausett in there?

"A Yes, he was.

"Q Don't relate conversation, but was inquiry made of Mr. Fausett about the whole thing?

"A Yes.

"Q And was that the first you ever heard you weren't delivering wood down there?

"A Yes.

"Q And at the time you signed that you honestly believed wood had been delivered down there?

"A Yes."

In face of this record, this contention cannot be sustained.

■ Again, it was contended on behalf of respondent that because the accident occurred at about 6:15 and because Fausett was supposed to commence work at 6:00, this is some evidence that Fausett was working for appellant at the time of the accident. In the face of the uncontradicted testimony of Fausett that he had not commenced work at the time of the accident, this contention cannot be sustained.

■ Again, it is contended that this slight deviation from the course of his employment by Fausett tended to

expedite his work for appellant. No authority is cited in support of this contention. It no doubt was advantageous to appellant that Fausett should maintain his health and ability to work. But certainly it could not be contended that he was acting within the scope of his employment as a truck driver while performing every act which tended to enhance his health. There is no merit in this contention. *Jasper v. Wells,* supra.

■■ Again, the contention is made that because appellant did permit Fausett to use the truck to haul hay on other occasions this was evidence tending to establish the relationship of master and servant, or agency. This contention cannot be sustained for two reasons: (1) He was not an agent of appellant even when he was hauling hay with appellant's permission. *Jasper v. Wells,* supra. (2) What might have been the relationship at another time and place would not prove agency here where he was admittedly acting solely for himself without appellant's permission.

The contention is made that where the relationship of master and servant is evidenced, the question whether in a particular instance the servant was acting within the scope of his employment, if there is a conflict, is a question of fact for the jury. But here there is no conflict. Both Gillespie and Fausett say that Fausett was not acting in the capacity of appellant's agent or servant at the time of the accident. Their testimony is directly to the contrary. True, if Fausett had testified that he was in the act of delivering wood for appellant at the time the accident occurred and had appellant denied this, it would have been a question of fact for the jury under those circumstances. But Fausett gave no such testimony. His testimony was that he was at the place of the accident for the purpose

of milking and feeding his cow and that he had not yet entered the employ of appellant.

■ None of the foregoing circumstances, nor all of them together, even tend to overcome the positive fact that Fausett was driving the truck at the time and place of the accident without appellant's permission exclusively for his own convenience.

We therefore hold that the court committed error in its failure to sustain appellant's motion for a directed verdict. Because of this disposition of the case, it will be unnecessary to give consideration to the other assignments of error. The judgment of the lower court is reversed and this cause remanded with directions to enter judgment in accordance with this opinion.