Troy Edward COOK, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 64–83.

United States District Court
D. Oregon.

Nov. 24, 1964.

Wallace P. Carson, Jr., Carson, Carson & Carson, Salem, Or., for plaintiff.

William B. Borgeson, Asst. U. S. Atty., Portland, Or., for defendant.

KILKENNY, District Judge.

For decision is the narrow issue of whether an employee of defendant was acting within the scope of his employment in driving defendant's motor vehicle at the time and place in question.

Mr. Knezevich, the driver of defendant's motor vehicle, which collided with plaintiff's vehicle, has been employed, since 1959, by the Soil Conservation Service, an agency of defendant, and during such period of time has been stationed at Corvallis, Oregon. He is what is known as a soil scientist, is assigned to the Benton County office of the Service and works out of that office. His work includes the performance of duties in the surrounding counties. Although his desig-

nated hours of employment are 8:00 o'clock A.M. to 5:00 o'clock P.M., five days a week, this arrangement, on account of the highly professional nature of his work, was quite flexible and, in fact, the hours and times worked by said employee were not controlled or limited to any specific time as to hours of the day or days of the week. For that matter, the evidence is clear that such employee would continue to work until he might complete a specific project. As a result, this particular employee would work about two-fifths of the time on Saturdays, would occasionally work on Sundays, and many times would work in the evenings. The extra time was voluntary. He neither expected nor requested payment of additional compensation for such work.

Assigned to Mr. Knezevich, for use in his work, is a Government vehicle, the use of which was a part of the employee's regular duties with defendant. A parking area is provided by the Service in which to park its vehicles and store them in the evening. All vehicles must be returned to the parking area and the employee is not permitted, under ordinary circumstances, to use the vehicles in driving to his home. Upon parking the vehicle in the evening, the employee returns the keys and the vehicle maintenance book to the Service office.

During the week of April 15, 1963, the employee was working on an assignment to complete a soil survey in the northern part of Marion County. The survey was behind schedule. On Friday, April 19th, the employee left a note with his supervisor indicating that he was going to return to the Marion County work on Saturday, April 20th, and continue to work on that survey. The request was acknowledged and permission granted by the supervisor. On the morning of said day, the employee drove his own vehicle to the Service office in Corvallis, at which time he reviewed the survey maps, picked up the keys to the Government vehicle that had been assigned to him, and the maintenance book and proceeded toward Albany. He stopped at one of the Service's seed plots on the way to check its prog-

ress. He continued to Albany and then proceeded north on Interstate 5, intending to go to the northern part of Marion County and work on the survey. He was suffering from a cold at the time, and, during the drive, became drowsy on account of consuming a number of antihistamine tablets. He drove off the highway at or near Salem and slept for several hours. The weather was cold and rainy and on account of his own physical condition and the condition of the weather, he decided to return to Corvallis and do office work, rather than try to complete the survey. He drove by the Salem district office of the Service and seeing no one in the office, continued on his return trip to Corvallis by way of highway 99W. Adair Air Force Station is on such highway and is located approximately ten miles north of Corvallis. On reaching the entrance to this station, the employee needed to use a toilet facility and drove to the home of a friend. From there he proceeded to the NCO Club where he had several drinks and some food within the period from approximately 6:00 P.M. to 11:00 P.M. He then went to the home of another friend. There is an unimportant conflict in the testimony as to whether he later returned to the NCO Club. In any event, about 1:00 A.M. on Sunday, one of his friends drove him to where he had parked the Government vehicle. He drove the vehicle to the main gate of the Air Force Station, intending to return directly to Corvallis, park the vehicle on the Government lot and return the keys and maintenance book to the Service office. Before turning toward Corvallis, he noticed what appeared to him to be a vehicle in difficulty and he made a right turn to the north to render assistance. As he approached this vehicle, it moved back on the highway and proceeded in a northerly direction. Knezevich then turned around and was driving south on the highway toward Corvallis with the intention of returning the vehicle to the parking area when he collided with the plaintiff's vehicle. The collision occurred approximately 72 feet north of the main gates of Adair Air Force Station and took

place shortly after 1:00 A.M. on Sunday, April 21st.

On the undiputed facts before me, I have no difficulty in finding that Knezevich was acting within the course and scope of his employment, as an employee of defendant, when he left Corvallis on the day in question, intending to go to the northern part of Marion County to complete his assignment and that he continued to act within the course and scope of his employment to and including the time of his arrival at the Adair Air Force Station. Furthermore, I have no difficulty in finding that he was still acting within the course and scope of his employment when he was met with a call of nature and decided to use the facilities of his friend at that station.

Additionally, it is quite clear that the employee was not acting in furtherance of the interests of defendant and certainly not performing duties within the course and scope of his employment during the course of his social activities at the homes of his friends and the military tavern, from approximately 6:00 P.M. to 1:00 A.M. the following morning. Reprehensible as the employee's prior conduct may have been, the fact remains that he was, at the time of the collision, in defendant's vehicle and was driving it toward the parking lot in compliance with instructions at the time the collision occurred.

■ It is a well recognized rule that an employee who temporarily departs from the scope of his employment does not reenter that scope until he is again reasonably near the authorized space and time limits and is acting within the intention of serving the master's business.[1]

■ It is my considered judgment and finding that the employee had reentered the scope of his employment with defendant and was driving the vehicle to defendant's parking lot for the purpose of storing the same and returning the keys

and other Government property to the Service office at the time of the accident. The facts in this case bear a close resemblance to the facts in Larkins v. Utah Copper Co., 169 Or. 499, 127 P.2d 354 (1942); McConville v. United States, 197 F.2d 680 (2d Cir. 1952); and United States v. Johnson, 181 F.2d 577 (9th Cir. 1950), in each of which the employee had deviated from the scope of his employment, but had returned thereto at the time the accident occurred. In each of those cases the court upheld a finding that the employee was acting within the course and scope of his employment at the time the accident occurred.

■ Even if we apply the "right to control" principle as stated in Kowaleski v. Kowaleski, 235 Or. 454, 385 P.2d 611 (1963) and Knapp v. Standard Oil Co., 156 Or. 564, 68 P.2d 1052 (1937), or the test of the "furtherance" of the employer's business as fixed in Tyler v. Moore, 111 Or. 499, 226 P. 443 (1924) and Barry v. Oregon Trunk Ry., 197 Or. 246, 253 P.2d 260 (1953), we arrive at the same result. It is the potential, rather than the actual, control. At the point of impact, defendant had the right to control the movements of its own vehicle and it was being driven in furtherance of defendant's objectives.

■■ Defendant claims that the employee was in violation of certain governmental regulations while on the Camp Adair premises.[2] While there is abundant evidence that the employee consumed a number of drinks of intoxicating liquor during the seven hour period he was on the base, there is no evidence that he was under the influence of intoxicants at the time of the accident. The general rule is that to be under the influence of intoxicating liquor a person must be influenced to an extent as to have lost, to an appreciable degree, the normal control of his body and mental facilities, and under most definitions it means the same

---

1. Restatement (Second), Agency § 237 (1958).

2. Chapter 55—Conduct of Employees, Section 2001.

"n. Operating a Government-owned or-leased vehicle, or private vehicle on official duty, while under the influence of intoxicants."

thing as intoxication. Kuroske v. Aetna Life Ins. Co., 234 Wis. 394, 291 N.W. 384, 385, 127 A.L.R. 1505; United Brotherhood of Carpenters, etc. v. Salter, 114 Colo. 513, 167 P.2d 954, 960 (1946). Even if we invoke the narrow definition as stated in Hasten v. State, 35 Ariz. 427, 280 P. 670 (1929), that the phrase means any influence, however slight, there is no evidence that the employee was so influenced. Assuming, however, that the court could infer from the record that the employee was driving the vehicle while under the influence of intoxicating liquors and was in violation of other orders and directives of defendant, nevertheless, those facts, in and of themselves, would not relieve defendant of responsibility on the facts before me. French v. Cresswell, 13 Or. 418, 425–26, 11 P. 62 (1886); Restatement (Second), Agency § 230 (1959); Murphey v. United States, 179 F.2d 743 (9th Cir. 1950).

Defendant's arguments on deviation in purpose, deviation in space and deviation in time are of no importance when applied to these facts. In answer, it is only necessary to point to Knezevich's return to the scope of his employment prior to the time of the accident. Cases such as Witt v. United States, 319 F.2d 704 (9th Cir. 1963); Jasper v. Wells, 173 Or. 114, 144 P.2d 505 (1943), and similar cases cited by defendant, lose their potency when read in contrast with the decisions in Larkins v. Utah Cooper Co., supra, and McConville v. United States and United States v. Johnson, supra, cases where there had been a deviation and the employee had returned to the scope of his employment. The law as applied in Rosa v. United States, 119 F.Supp. 623 (D. Hawaii 1954) and Mandelbaum v. United States, 131 F.Supp. 187 (E.D.N.Y.1955), was proper under the facts in those cases. For example, in Rosa, the accident occurred while the serviceman was clearly on a beer drinking lark of his own. He had not returned to the scope of his employer's business at the time the accident occurred. In Spradley v. United States, 119 F.Supp. 292 (D.N.M.1954), the employee was on a private errand for a third

person at the time the accident occurred. Even so, that court recognized that the doctrine of *respondeat superior* may be properly invoked where the servant is trying to assist another vehicle in distress along a highway. The law as stated in Cannon v. Goodyear Tire & Rubber Co., 60 Utah 346, 208 P. 519 (1922), would, if it means what defendant says it means, be in direct conflict with the Oregon law as established in Larkins.

The foregoing shall serve as my findings and conclusions on the issues presented.

It is so ordered.